UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GROUP 32 DEVELOPMENT & ENGINEERING, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-2436-B |
| GC BARNES GROUP, LLC, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Vacate *Ex Parte* Arbitration Award (doc. 7), filed by GC Barnes Group, LLC ("GC Barnes") on August 7, 2014, as well as a Motion to Confirm Arbitration Award (doc. 8), filed by Group 32 Development & Engineering, Inc. ("Group 32") on August 26, 2014. For the reasons outlined below, GC Barnes' Motion to Vacate *Ex Parte* Arbitration Award is **DENIED** and Group 32's Motion to Confirm Arbitration Award is **GRANTED**.

### I.

### BACKGROUND[1]

This case arises from a dispute between the entities Group 32 and GC Barnes over the Consulting and Engagement Agreement (the "Agreement") they entered into on January 22, 2013.

---

[1] The Court draws its factual account from the parties' briefs and documents presented in support of their motions. Docs. 7, 8. Unless characterized as a contention by one of the parties, these facts are undisputed.

Mot. to Vacate 2; Mot. to Confirm 2. This Agreement, outlining the consulting services that GC Barnes was to provide to Group 32, contains the following arbitration clause:

> The laws of the State of Texas thereto shall govern this agreement and all matters and issues collateral. Each party hereto irrevocably agrees that any unresolved claim or dispute arising from this Agreement or breach thereof, or default by either party, for any reason whatsoever, shall abide by, and be settled by binding arbitration with the American Arbitration Association in the State of Texas.

Mot. to Vacate 3; Mot. to Confirm 2, App. 051–55. Group 32 alleges that it paid GC Barnes $300,000.00 pursuant to the Agreement, but that GC Barnes never performed any of the required services in return. Mot. to Confirm 3. Group 32 further maintains that GC Barnes made false representations to Group 32, thus fraudulently inducing it to sign the Agreement and pay the $300,000.00. *Id.* Group 32 states that its Chief Executive Officer, Frederick Perkins, contacted Gregory Barnes, the managing member of GC Barnes, to "request a refund of the $300,000.00 payment," but that this communication produced no results. *Id.; see also* Mot. to Vacate, Decl. of Gregory Barnes 2. Group 32 explains that it subsequently attempted to resolve the dispute through several calls, emails, and demand letters. Mot. to Confirm 3, App. 001–08. However, these efforts proved unsuccessful, and as a result, on November 12, 2013, Group 32 initiated arbitration proceedings with the American Arbitration Association (the "AAA") against GC Barnes. *Id.*, App. 031, Notice of Intent to File Demand for Arbitration; App. 032–36, Demand for Arbitration.

Group 32 claims that it provided GC Barnes with "written notice of the arbitration submission by electronic and certified mail," but that GC Barnes chose to ignore the notice it received. Mot. to Confirm 3. However, GC Barnes asserts that it never received notice of the arbitration hearing, and instead only received the following from its mail forwarding service on April

4, 2014: letters indicating that copies of Group 32's filings were sent to GC Barnes by email and regular mail; bills from the AAA; and other letters stating that the hearing had already occurred. Mot. to Vacate 2–3. GC Barnes claims that it was not made aware that the arbitration hearing would take place on April 7, 2014 until it received an April 10, 2014 letter from the AAA stating that the arbitration had already occurred. *Id.* at 3. Therefore, GC Barnes did not appear at the April 7, 2014 hearing. *Id.*; Mot. to Confirm 3. Nevertheless, the arbitrator held an *ex parte* arbitration proceeding on that date. Mot. to Vacate 3; Mot. to Confirm 3, App. 074–77. Thereafter, the arbitrator offered the parties an opportunity to submit post-hearing briefing. Mot. to Confirm 3, App. 074. Group 32 submitted supplemental briefing, but GC Barnes does not allege that it made such an attempt to do so. *Id.*, App. 074–78. The proceedings were subsequently closed on April 18, 2014. *Id.*, App. 078.

In the arbitration award, signed on May 8, 2014, the arbitrator found that GC Barnes had received proper notice of the proceeding in accordance with AAA rules, and that it was liable to Group 32 in the amount of $907,232.10, comprising $300,000.00 as damages, $7,232.10 as pre-judgment interest on the damage award from November 13, 2013 until May 8, 2014, and $600.000.00 as punitive damages. Mot. to Confirm 4, App. 086. Group 32 was also awarded pre-judgment interest on "$300,000.00 from May 9, 2014 until the earlier of either the day preceding the date this amount is paid or the date preceding the date that judgment, if any, is rendered on this Award," as well as post-judgment interest and arbitration costs. *Id.*, App. 086–87.

On May 22, 2014, Group 32 petitioned the 298th Judicial District Court in Dallas County, Texas to confirm the arbitration award. Doc. 1-4, Pet. to Confirm Arbitration Award 1. On July 7, 2014, GC Barnes removed the case to this Court. Doc. 1, Notice of Removal. GC Barnes filed its present Motion to Vacate *Ex Parte* Arbitration Award (doc. 7) on August 7, 2014. Group 32 then

filed its Motion to Confirm Arbitration Award and Response to Respondent's Motion to Vacate (doc. 8) on August 26, 2014. The Motions are ripe for the Court's review.

## II.

## LEGAL STANDARD

The Federal Arbitration Act directs courts to confirm arbitration awards unless the award is vacated, modified, or corrected. 9 U.S.C. § 9. "A district court's review of an arbitration award is exceedingly narrow." *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–86 (2008) (noting that the court must have an "exceedingly deferential" view of the arbitrator's decision) (quoting *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 393 (5th Cir. 2003)). The Court "may not reconsider an award based on alleged errors of fact or law or misinterpretation of the contract." *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir. 1998) (citing *Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996)). "In other words, [the court] must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement." *Executone Info. Sys. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994) (citing *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990), *cert. denied*, 501 U.S. 1206 (1991)). "In determining whether the arbitrator exceeded his jurisdiction, [the court] resolve[s] all doubts in favor of arbitration." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25 (1983)).

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, identifies the following limited circumstances under which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court has held that the FAA provides the exclusive grounds for vacating an arbitration award. *Hall St. Assocs., L.L.C.*, 552 U.S. at 585–86. Any alternative interpretation of the FAA "opens the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 588 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003)).

Thus, "[i]n reviewing arbitration proceedings, courts are limited to the question [of] whether the proceedings were fundamentally unfair." *Pac. Breakwater W., Inc. v. Wellness Int'l Network, Ltd.*, No. 3:97-CV-1556, 2000 WL 276812, at *6 (N.D. Tex. Mar. 9, 2000) (citing *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990)); *see also MPJ v. Aero Sky, L.L.C.*, 673 F. Supp. 2d 475, 485 (W.D. Tex. 2009). A "fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence before the decision makers, and that the decision makers are not infected with bias." *Id.* (quoting *Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994)). The Fifth Circuit "examines the requirement

of fundamental fairness in relation to the statutory grounds for vacatur." *Id.* The party moving for vacatur bears the burden of proof. *MPJ*, 673 F. Supp. 2d at 485.

## III.

## ANALYSIS

The issue in dispute in both GC Barnes' Motion to Vacate the Arbitration Award and Group 32's Motion to Confirm the Arbitration Award is whether GC Barnes was properly notified of the arbitration proceedings and had the opportunity to be heard. GC Barnes contends that it was "not served with advance notice of the arbitration hearing and thus was not given time to respond to it," and that, as a result, its due process rights were violated. Mot. to Vacate 1. Specifically, GC Barnes alleges that the violation of its due process rights gives rise to three of the four situations allowing for vacatur of an arbitration award under the FAA: (1) the award was procured by corruption, fraud, or undue means;[2] (2) the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon good cause shown, or in refusing to hear pertinent and material evidence; and (3) the arbitrator exceeded her powers by going forward with the arbitration. Mot. to Vacate 3–4; *see* 9 U.S.C. § 10. All of GC Barnes' contentions are thus based on the argument that he was denied proper notice of the arbitration proceeding.

As the Supreme Court has explained, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,

---

[2] GC Barnes concedes that it does not have evidence at this time to advance this argument, but nonetheless lists it. Mot. to Vacate 4, n.1.

314 (1950). However, "[w]hile 'all parties in an arbitration proceeding are entitled to notice and an opportunity to be heard,' due process is not violated if the hearing proceeds in the absence of one of the parties when that party's absence is the result of his decision not to attend." *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987) (citing *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979)). "For vacatur of an arbitration award," the court requires "the absence of actual or constructive notice." *21st Fin. Servs., L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 337 (5th Cir. 2014) (citing *Bernstein Seawell & Kove*, 813 F.2d at 729). Where there is sufficient evidence showing that a party has received actual or constructive notice of the arbitration hearing, the award will be enforced. *Id.*

Group 32 asserts, and GC Barnes does not dispute, that the arbitration was to be governed by the Rules of the AAA, as set forth in the Agreement. Mot. to Vacate 3; Mot. to Confirm 2. Accordingly, the parties "incorporated into their Agreement the AAA's Commercial Arbitration Rules." *Int'l Techs. Integration, Inc. v. Palestine Liberation Org.*, 66 F. Supp. 2d 3, at *11 (D.C. Cir. 1999) (citing AAA Commercial Arbitration Rule 1(a) ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . .")).

Therefore, the Court turns to Rule 43 of the AAA Commercial Arbitration Rules ("AAA Comm. Arb. R.") governing servicing of notice and communications, which provides that:

> (a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules *may be served on a party by mail addressed to the party or its representative at the last known address* or by personal service, in or outside the state where the arbitration is to be

> held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

AAA Comm. Arb. R. 43(a) (emphasis added). Further, once notice has been given, Rule 31 states that:

> Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

AAA Comm. Arb. R. 31.

Although GC Barnes acknowledges that it received certain communications prior to the April 7, 2014 arbitration proceeding, it nonetheless maintains that its due process rights were violated because it was not served with "advance notice of the arbitration hearing." Mot. to Vacate 1. GC Barnes, however, concedes that, beginning on April 4, 2014, it received certain items from its mail forwarding service. *Id.* at 2. The documents received include: (1) a letter dated March 25, 2014 from Group 32's legal representatives "indicating that a copy of a filing for Group 32 was sent to GC Barnes by email and regular mail;" (2) a bill dated March 26, 2014 from the AAA; (3) an envelope dated April 1, 2014 from Group 32's legal representatives "with copy of notice of filing and 'proof of service;'" and (4) other letters and bills pertaining to the arbitration. Mot. to Vacate 2–3.[3] GC Barnes alleges that "[n]one of these documents include a notice of arbitration hearing" and maintains that it first became aware of the April 7, 2014 hearing through the AAA's April 10, 2014 letter stating that the arbitration had already occurred. *Id.* at 3. Thus, GC Barnes argues it was not

---

[3] GC Barnes provides the Declaration of Gregory Barnes, the managing member of GC Barnes, in which he states that he "personally did not receive" any items, but that his company, GC Barnes, did receive the items listed above. Mot. to Vacate, Decl. of Gregory Barnes 2–3.

given notice and an opportunity to be heard because "it received late notice of the pendency of the arbitration hearing." *Id.*

In response, Group 32 avers that GC Barnes received both actual and constructive notice of the arbitration hearing. Mot. to Confirm 7. In support of this contention, Group 32 lists the efforts it made to inform GC Barnes of the upcoming arbitration, and it also identifies the communications that AAA sent to GC Barnes prior to the hearing. *Id.* at 6–7. First, Group 32 explains that it sent the following items by electronic mail as well as by certified mail to GC Barnes' address (which Gregory Barnes' declaration affirmed is the entity's correct address): (1) a November 8, 2013 letter enclosing a draft of Group 32's arbitration demand, Mot. to Confirm, App. 024–30; (2) a November 12, 2013 letter enclosing Group 32's arbitration demand, App. 031–43; and (3) a March 25, 2013 letter enclosing Group 32's Initial Arbitration Submission, filed with the AAA on March 24, 2014, App. 044–55. Group 32 also offers an April 8, 2014 document, sent after the arbitration hearing, which contains the supplemental briefing it provided to the arbitrator regarding pre-judgment interest. Mot. to Confirm 6, App. 144–46. To demonstrate that these documents were properly sent to and received by GC Barnes, Group 32 appends copies of these items and further presents signed certified mail receipts. Mot. to Confirm 6; App. 012, 023, 043, 045, 146. Group 32 also declares that none of the electronic mails were returned as undeliverable. Mot. to Confirm 6.

Additionally, Group 32 provides the following evidence of AAA's attempts to notify GC Barnes of the April 7, 2014 arbitration hearing: (1) a January 27, 2014 email confirming the receipt of Group 32's arbitration demand and setting a preliminary scheduling hearing for February 4, 2014, App. 058; (2) a February 19, 2014 email and letter confirming the appointment of an arbitrator and including a Scheduling Order as well as a Notice of Final Arbitration Hearing, which set a final

telephonic hearing for April 7, 2014, App. 059–66; (3) and a February 28, 2014 email and letter enclosing an Amended Scheduling Order, App. 067–72. Group 32 further presents the emails and letters AAA sent GC Barnes after the April 7, 2014 hearing, which inform the party that the proceedings are closed and that an award is issued in favor of Group 32. Mot. to Confirm 7, App. 073–77; 078; 079–82; 083–89. Again, Group 32 offers signed certified mail receipts establishing the receipt of each of these items, and it also indicates that none of the emails were returned. Mot. to Confirm 7, App. 065; 071; 076; 081; 088.

After reviewing the relevant arguments and evidence presented by the parties, the Court concludes that GC Barnes' due process rights were not violated, as it did in fact receive, at the very least, constructive notice of the April 7, 2014 arbitration proceeding. As a preliminary matter, the Court notes that nowhere does GC Barnes allege that proper notice was not sent in accordance with the AAA rules; rather, GC Barnes merely contends that it "did not *receive* sufficient mail notice of the arbitration hearing until after the arbitration hearing had concluded." Mot. to Vacate 6 (emphasis added). However, due process requirements are satisfied, and an arbitration award will not be vacated, if the affected parties are given either actual *or* constructive notice. *See 21st Fin. Servs., L.L.C.*, 747 F.3d at 337. Accordingly, GC Barnes' argument that it lacked actual notice of the hearing, even if true, would not automatically warrant the vacatur of the award. *See id.*

Here, Group 32 has provided ample evidence demonstrating that GC Barnes received at least constructive notice of the arbitration proceeding, as timely notice was sent to GC Barnes in accordance with the AAA rules. Specifically, AAA's Rule 43, which provides that a notice "may be served on a party by mail addressed to the party or its representative at [its] last known address" is satisfied by the communications Group 32 and the AAA sent to GC Barnes' address by certified mail.

The confirmed receipts presented by Group 32 indicate that notice of the April 7, 2014 hearing (among other communications) was sent to GC Barnes on February 19, 2014, giving the party sufficient time to prepare and appear at the proceedings. Therefore, GC Barnes was given notice of the hearing, thus precluding vacatur of the award on due process grounds. *See 21st Fin. Servs., L.L.C.*, 747 F.3d at 338, n.15 (finding that constructive and actual notice of arbitration proceedings existed where evidence demonstrated that the party moving for vacatur had acknowledged the other party's arbitration demand and had confirmed receipt of a demand letter sent by the AAA); *cf. Kaplan v. Alfred Dunhill of London*, No. 96 Civ. 0258 (JFK), 1996 WL 640901, at *1–6 (S.D.N.Y. Nov. 4, 1996) (finding that the party seeking vacatur was deprived of a fundamentally fair hearing where the notice was addressed to a title that did not exist at the entity and was subsequently misplaced, and where the arbitrator learned of the party's lack of notice but refused to reopen the proceedings).

Furthermore, the Court finds no reason why the award should be vacated based on the arbitrator's decision to proceed *ex parte* on the April 7, 2014 hearing, as AAA Rule 31 permits such a practice. AAA Comm. Arb. R. 31 ("Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement . . . ."). Group 32 and the AAA made repeated attempts to notify GC Barnes of the proceedings, and based on the receipts of the documents sent by certified mail, neither Group 32 nor the AAA had any indication that GC Barnes may not have been properly notified. Moreover, GC Barnes acknowledges the receipt of essential communications prior to the hearing, which would have alerted it to the pendency of arbitration proceedings against it. Mot. to Vacate 2; *see Marsillo v. Genitron*, No. 03 Civ. 2117 (TPG), 2004 WL 1207925, at *5–6 (S.D.N.Y. June 1, 2004) (finding that a party appealing an arbitration award had actual knowledge of the proceedings

where he had received a letter containing information regarding the arbitration, in part because the letter signaled that he may not be receiving all the communications that were sent to him related to the proceedings).

Because GC Barnes' Motion to Vacate the Arbitration Award is based entirely on its contention that its due process rights were violated, and because there is no indication that such violations occurred, the Court concludes that the arbitrator neither exceeded her powers nor otherwise engaged in any misconduct in proceeding *ex parte*. Accordingly, GC Barnes' Motion to Vacate the Arbitration Award is **DENIED**.

Turning to the confirmation of the arbitration award, the Court notes that Group 32 has filed the arbitration award and all necessary papers under 9 U.S.C. § 13. Accordingly, Group 32's Motion to Confirm the Arbitration Award is **GRANTED**.

## IV.

## CONCLUSION

For the reasons stated above, GC Barnes' Motion to Vacate *Ex Parte* Arbitration Award (doc. 7) is **DENIED** and Group 32's Motion to Confirm Arbitration Award (doc. 8) is **GRANTED**. The Court hereby **CONFIRMS** the award of arbitration, dated May 8, 2014, in all respects, and **ORDERS** that final judgment be entered in accordance with the award of arbitration confirmed above. Group 32 shall recover from GC Barnes the amount set forth in the award of arbitration, $907,232.10, as well as pre-judgment and post-judgment interest and costs of arbitration. As such, it is **ORDERED** that this is a final appealable order under Rule 54.

SO ORDERED.

SIGNED: January 9, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE